# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ERNEST JORD GUARDADO,

              Plaintiff,

      vs.

STATE OF NEVADA, *et al.*,

              Defendants.

Case No.: 2:18-cv-00198-GMN-VCF

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 97), filed by pro se Plaintiff Ernest Jord Guardado ("Plaintiff").[1] Defendants Julio Calderin, James Dzurenda, Jennifer Nash, Richard Snyder, Kim Thomas, Harold Wickham, and Brian Williams (collectively "Defendants") filed a Response, (ECF No. 108), and Plaintiff filed a Reply, (ECF No. 113).

Also pending before the Court, is Defendants' Motion for Summary Judgment, (ECF No. 114).  Plaintiff filed a Response, (ECF No. 117), and Defendants filed a Reply, (ECF No. 118).

Also before the Court, is Plaintiff's Motion for Transcript, (ECF No. 90).

Also pending before the Court, are Plaintiff's Motions for Sanctions, (ECF Nos. 91, 99).  Defendants filed Responses, (ECF Nos. 93, 99), and Plaintiff filed Replies, (ECF Nos. 95, 109).[2]

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] Also pending before the Court are Plaintiff's Motions to Extend Time, (ECF Nos. 107, 112).  Good cause appearing, Plaintiff's Motions are **GRANTED *nunc pro tunc***.

**I.**        **BACKGROUND**

Plaintiff is a prisoner in the custody of the Nevada Department of Corrections (NDOC), and currently housed at High Desert State Prison (HDSP). (*See* Second Am. Compl. ("SAC"), ECF No. 63).[3]

On April 5, 2017, Plaintiff sent kites to Defendants NDOC Director James Dzurenda, Warden Brian Williams, Assistant Warden Jennifer Nash, and Chaplain Julio Calderin regarding access to the Native American grounds and the denial of his chosen religion. (*Id.* at 5).  More specifically, Plaintiff, who is not of Native American race or ethnicity, sought to practice the Native American religion. (*Id.*).  In those kites, Plaintiff cited case law arguing that that the denial of non-Native Americans' abilities to practice Native American beliefs violated those inmates' rights. (*Id.*).  On July 11, 2017, Plaintiff filed a grievance explaining that no other religion required inmates to show proof of their ethnicity to practice their beliefs. (*Id.* at 5–6).

On August 1, 2017, Defendant Chaplain Calderin responded and explained that the requirement of proving Native American descent was imposed by the Nevada Indian Commission ("NIC"). (*Id.* at 6).  That same day, Plaintiff filed a first level grievance which explained that NIC had no authority over NDOC. (*Id.*).  On August 28, 2017, Williams responded and quoted administrative regulation ("AR") 810. (*Id.*).  Relevant here, AR 810.3 states that inmates eligible to participate in Native American sweat lodge ceremonies include inmates who:

---

[3] Plaintiff's Second Amended Complaint was signed under penalty of perjury. (SAC at 14).  Thus, to the extent the factual allegations in Plaintiff's Second Amended Complaint are based upon personal information and set forth facts that would be admissible in evidence, the allegations will be considered as evidence. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *see Lopez v. Smith,* 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc) ("A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence.").

a. Show proof of being enrolled in a federal recognized tribe;
b. Demonstrate credible association with tribal living via written documentation from a recognized tribe;
c. Demonstrate credible association with tribal living via written documentation from a tribe recognized by the United States government as having existed prior to 1887 (Dawes Act enacted) but not necessarily registered with the federal government; [or]
d. Successfully obtain written verification of Native American ethnicity from the [NIC].

(AR 810.3, Ex. A to Defs.' MSJ at 11–12).

On August 31, 2017, Plaintiff filed a second level grievance. (SAC at 6).  On November 2, 2017, Defendant Deputy Director of Programs Kim Thomas responded that Plaintiff could not grieve an outside agency and that Plaintiff needed to go through the religious review team ("RRT"). (*Id.*).  Plaintiff filed the required documents with the RRT. (*Id.*).  He requested that the "exclusionary" language be removed from AR 810.3, and that he be permitted to practice Native American religion. (*Id.*).  The RRT committee did not respond. (*Id.*).

On February 2, 2018, Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging violations of the First Amendment Free Exercise Clause, Fourteenth Amendment Equal Protection Clause, and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Compl., ECF No. 1-1).  Additionally, Plaintiff filed a Motion for Preliminary Injunction, (ECF No. 2), requesting a court order enjoining Defendants "from denying Plaintiff and all those similar situated the ability to practice and participat[e] in their Native [I]ndian beliefs, the racial discrimination of denying non Native American Indians from participating in sweat lodge, prayer circle, drum circle, sacred pipe and access to the Native Indian grounds." (Mot. for Prelim. Inj. at 1, ECF No. 2).  Additionally, Plaintiff requested that Defendants be "restrained from deny[ing]

plaintiff access to the Native Indian grounds, sweat lodge, drum circle, prayer circle, sacred pipe, and all other religious functions with the other Native Indian practitioners." (*Id.*).   On October 9, 2018, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction. (Mins. of Proceedings, ECF No. 21).   The Court partly granted the motion, ordering NDOC to allow Plaintiff to participate in Native American religious ceremonies with Native American practitioners including sweat lodge, prayer circle, drum circle, smudging, sacred pipe, and access to the Native Indian grounds. (Order on Prelim. Inj. at 6, ECF No. 24).   The Court denied the motion as to Plaintiff's request that all similarly situated prisoners are granted a similar accommodation. (*Id.*).

On March 27, 2018, Plaintiff submitted Faith Group Affiliation Declaration Form seeking to change his faith group affiliation to Native American. (Ex. A to Mot. Recons., ECF No. 28-1).   It was denied the same day because "Inmate has no proof of being Native American." (*Id.*).

On September 20, 2018, Plaintiff again submitted a Faith Group Affiliation Declaration Form seeking to change his faith group affiliation to Native American. (Ex. B to Mot. Recons., ECF No. 28-1).   It was denied on October 2, 2018 because Plaintiff had "no tribal papers." (*Id.*).

On October 12, 2018, Defendants filed a Motion for Stay of Enforcement of Preliminary Injunction, (ECF No. 23), and on October 30, 2018, Defendants filed a Motion for Reconsideration, (ECF No. 28).   The Court denied these motions on December 6, 2018. (Order, ECF No. 43).

Plaintiff and Defendants have now filed summary judgment motions, (ECF Nos. 97, 114).   Additionally, Plaintiff has filed several motions seeking various forms of relief, (ECF Nos. 90, 91, 99, 107, 112).

1

**II.**           **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on

which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

III.      **DISCUSSION**

    A.    **Motions for Summary Judgment, (ECF Nos. 97, 114)**

The parties move for summary judgment on Plaintiff's claims under RLUIPA, the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment.[4]  The Court addresses each of Plaintiff's claims in turn.

       *1.    Religious Land Use and Institutionalized Persons Act (RLUIPA)*

RLUIPA expands rights under the First Amendment's Free Exercise Clause, mandating that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person–
>     (1) is in furtherance of a compelling governmental interest; and
>     (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)–(2).  A prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation. *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015).

Under RLUIPA, "religious exercise" is broadly defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  The Supreme Court has emphasized that RLUIPA does not override an institution's safety and security interests, stating "[w]e have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with

---

[4] Plaintiff also moves for summary judgment on a claim for "supervisory liability/deliberate indifference/ negligence." (Pl.'s Mot. Summ. J. ("MSJ") at 5, ECF No. 97).  While Plaintiff included this claim in the First Amended Complaint, the Court dismissed this claim with leave to amend. (Mar. 4, 2019 Order on R. & R., ECF No. 59).  Plaintiff subsequently filed his Second Amended Complaint but did not include a claim for "supervisory liability/deliberate indifference/negligence."  The Court will therefore not address this cause of action.

particular sensitivity to security concerns." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

Here, Plaintiff argues Defendants imposed a substantial burden on his exercise of religion by implementing and enforcing AR 810.3. (Pl.'s MSJ at 6). In order to prevail on his Motion for Summary Judgment, Plaintiff must establish the absence of a genuine issue of fact on each issue material to his case. *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). A "genuine dispute" regarding a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

*(a)*    *sincere religious belief*

Defendants contend that "there is no genuine issue of material fact that [Plaintiff] fails to show his request to practice Native religion is sincerely based on a religious belief and not some other motivation." (Defs.' MSJ at 10, ECF No. 114). As evidence, Defendants submit NDOC Faith Group Affiliation Declaration Forms filled out by Plaintiff in 2009 and 2011 wherein Plaintiff lists "wicca" as faith group affiliation. (Faith Group Affiliation Decl. Forms at 3, 4, Ex. C to Resp. Mot. TRO, ECF No. 15-3). Defendants emphasize that it was not until 2018, that Plaintiff requested to be affiliated with Native American religion. (*Id.* at 2); (Defs.' MSJ at 11). According to Defendants, this "strongly suggests" that his request for accommodation is not based on a sincere religious belief. (*Id.*).

Plaintiff contends his religious beliefs are sincere, (SAC at 7), and disputes Defendants' assertions that he did not request to be affiliated with Native American religion until 2018. (Pl.'s Resp. MSJ at 1). Plaintiff provides the declaration of Kahmuhhatee Eisenhower, the facilitator and sweat leader for the protective

segregation Native American group. (Eisenhower Decl., Ex. A to Pl.'s Resp. MSJ, ECF No. 117).  Mr. Eisenhower asserts that in 2017, Plaintiff filled out a Faith Group Affiliation Declaration Form requesting to have his religion listed as Native American and to be put on the list for Native American Practitioners. (*Id.*).  Mr. Eisenhower further declares that he personally handed the form to Defendant Chaplain Calderin but the request was rejected for lack of "tribal papers." (*Id.*).  Plaintiff also provides declarations from other fellow practitioners of the Native American religion wherein they aver that Plaintiff's beliefs are sincere; that Plaintiff was nominated to be one of the three group elders, and accepted said responsibility; and that there have never been any issues with Plaintiff or other non-Native Americans participating in Native American ceremonies. (Brady Decl., Ex. K to Pl.'s Resp. MSJ); (Aguilar Decl., Ex. M to Pl.'s Resp. MSJ).

While there may be a dispute as to the sincerity of Plaintiff's religious beliefs, it is certainly not a "genuine" dispute. *See Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) ("Factual issues are considered genuine when they have a real basis in the record.").  First, the Court is not persuaded that a change in religious beliefs is indicative of insincerity. *See Pasaye v. Dzurenda*, 375 F. Supp. 3d 1159, 1168 (D. Nev. 2019), *on reconsideration in part*, No. 2:17-cv-02574-JAD-VCF, 2019 WL 2905044 (D. Nev. July 5, 2019) ("[C]ourts have rejected the argument that failing to strictly adhere to one's own faith or even previously identifying with another religion is determinative of current beliefs.").  Although Defendants suggest that Plaintiff's requested accommodation is likely based on "an ulterior motive such as an opportunity to spend more time outdoors as a protective segregation inmate, participate in sweat lodging, and use tobacco pipes," (Defs.' MSJ at 11), there is no evidence to support this. Defendants further argue that Plaintiff has failed to demonstrate that he sincerely held

"the belief that he claimed being a part of" because he "showed no background of being Native American." (Defs.' Reply MSJ at 2, ECF No. 118).  But Defendants' argument relies on the misguided conclusion that one's race is directly tied to the sincerity of one's religious beliefs.  Accordingly, Plaintiff has sufficiently shown an absence of a genuine issue of material fact as to this element.

*(b)* *substantial burden*

"A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015).

Defendants insist Plaintiff cannot show that his religious exercise has been substantially burdened by Defendants.  According to Defendants, no such burden exists because "[Plaintiff] can provide proof of Native American affiliation through one of [the] four methods" outlined in AR 810.3 and thereby obtain permission to participate in Native American ceremonies. (Defs.' MSJ at 11).  Defendants conclude that AR 810's limitations may be an inconvenience, "but such inconvenience is not a substantial burden." (*Id.*).  The Court disagrees.  AR 810.3 requires proof of Native American ethnicity or tribal membership.  As such, Defendants have conditioned Plaintiff's religious exercise on proof of Native American lineage—something Plaintiff cannot possibly show because he is not Native American.  This is more than an "inconvenience."

Defendants also submit that no substantial burden exists because Plaintiff can practice Native American religion in his cell. (Defs.' MSJ at 11–12).  But as the Supreme Court explained in *Holt*, the availability of alternative means of practicing religion is a relevant consideration when addressing a prisoner's First Amendment

claim. *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015).  However RLUIPA "provides greater protection.  RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.*  Accordingly, there is no genuine dispute of material fact that AR 810.3 imposes a substantial burden on Plaintiff's religious exercise.

### *(c)   compelling government interest*

Because Plaintiff has met his burden of showing that AR 810.3 substantially burdened his exercise of religion, the burden shifts to the Defendants to show that its requirement that Plaintiff show Native American lineage before he can participate in sweat lodge ceremonies  "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

Defendants indicate that the compelling interests here are NDOC's penological interests.  More specifically, Defendants represent that "[p]ermitting non-Native American inmates to participate in Native American ceremonies would give rise to serious health, safety and security concerns that would impose substantial burden on the operation of NDOC." (Defs.' MSJ at 12).

First, Defendants explain that as of February 2020, there are approximately 3,200 inmates housed at HDSP, and out of those inmates, almost 1,400 inmates are in the Protective Segregation Unit (PSU). (Nash Decl. at 2, Ex. D to Defs.' MSJ, ECF No. 114-4).  Defendants posit that if all HDSP inmates desire to take part in Native American ceremonies "simply to take advantage of the benefits," NDOC would not be able to supervise or protect those inmates. (*Id.*).  But evidence regarding the number of inmates is not sufficient to prove that there would be such a devastating number of

inmates seeking to "take advantage of the benefits," that NDOC staff would become so overwhelmed that they would be precluded from supervising and protecting those inmates. Indeed, Defendants assume that all inmates would be willing to forego their own sincerely held religious beliefs and practices in order to partake in Native American ceremonies. Defendants' statements are nothing more than speculation. *See Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 452 (1st Cir. 2014) ("Speculation about mere possibilities, without more, is not enough to stave off summary judgment.").

Next, Defendants insist that due to "the controlled movement scheme at HDSP, permitting inmates to attend any services without certain limitations and regulations, such as AR 810.3 here, would jeopardize the safety and security of inmates and employees at HDSP." (Nash Decl. at 2). But Defendants provide no further detail as to how the "controlled movement scheme" would be affected. (*Id*.). Defendants also mischaracterize Plaintiff's requested relief. Plaintiff does not seek that HDSP shed all regulations and limitations on inmates attending services. Rather, he requests an accommodation allowing him to practice his chosen religion without having to prove that he is of a race or ethnicity that is not his own.

In addition, Defendants contend that AR 810 prevents potential violence between Native American inmates and non-Native American inmates, which is a compelling interest. (Snyder Decl., Ex. B to Defs.' MSJ, ECF No. 114-2). Defendants assert there have been "incidents at various institutions" where Native prisoners have destroyed their sweat lodge because they believed it had been desecrated by the presence of non-Natives. (Defs.' MSJ at 12). However, as Plaintiff correctly points out, Defendants fail to provide any evidence of this potential violence. (Pl.'s Resp. MSJ at 4, ECF No. 117). In fact, the affidavit on which this argument relies merely states that "Native American religious experts who volunteer to serve inmates'

religious needs . . .  have expressed concerns as to Native American grounds in prison being desecrated if non-Native American inmates are given access and the potential for resulting violence from such desecration." (Snyder Decl., Ex. B to Defs.' MSJ).  Not only does Defendant Snyder's affidavit not mention any incidents of violence at various institutions, but the statement also appears to be based on inadmissible hearsay. *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (indicating that hearsay "cannot properly be considered in opposition to a summary judgment motion.").

Defendants also attempt to support their argument by relying on *Mawee v. Donat*, No. 3:06-cv-122-RCJ-VPC, 2009 WL 3062787 (D. Nev. Sept. 9, 2009).  There, a Native inmate sued NDOC claiming that he and other general population inmates were denied access to the sweat lodge after the inmate complained about non-Native inmates being allowed to use it. *Id.*  He also claimed that this constituted "desecration and destruction" of the sweat lodge area. *Id.*  But nowhere in the *Mawee* opinion does it state that allowing non-Native inmates in the prison's sweat lodge resulted in inmate violence or physical destruction of the sweat lodge. *See id.*  Put simply, Defendants fail to identify even one actual instance of sweat lodge destruction or inmate violence in support of a "compelling interest."

*(d)     least restrictive means*

"'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364–65 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014)).  A prison "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy

1  of less restrictive measures before adopting the challenged practice." *Shakur v.*
2  *Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).

3       Defendants' Motion for Summary Judgment provides no discussion on this
4  point, except only to assure the Court that the declarations of Defendants Nash and
5  Snyder "show that NDOC had contemplated less restrictive means and explain why
6  less restrictive means would not work." (Defs.' MSJ at 13).  Upon review of Defendant
7  Nash's declaration, it is unclear which part lends support to Defendants' argument; all
8  the statements contained therein are broad generic assertions.  However, most
9  relevant to the instant inquiry is Nash's assertion that "certain limitations and
10 regulations on faith group services are crucial for the safety and security of HDSP by
11 keeping protective segregation inmates and general population inmates separate
12 from one another." (Nash Decl. at 2).  Because no further discussion is provided, this
13 statement does not show that Defendants have actually considered and rejected the
14 efficacy of less restrictive measures.

15      Regarding Snyder's declaration, it indicates that "Administrative Regulation
16 810.2 was amended on September 11, 2017, to permit inmates in our earth based
17 faith groups to participate in their own, non-Native American sweat lodge ceremony,"
18 and that one of the reasons for this decision was that "Native American services often
19 involve use of eagle feathers which only Native Americans are permitted to possess
20 under federal law." (Snyder Decl., Ex. B to Defs.' MSJ).  Another consideration
21 underlying the decision was that "Native American pipe ceremony involves permitted
22 use of tobacco" which is  a "unique accommodation that is unique to this group."
23 (*Id.*).

24      As best the Court can discern, Snyder contends that providing earth-based
25 faith groups the option to participate in their own, non-Native American sweat lodge

1    ceremony is a less restrictive means that NDOC has adopted.  But this assumes that

2    the religious exercise of an inmate with Native American religious beliefs is not

3    substantially burdened so long as he can attend the ceremony of a different faith

4    group.  This is by no means a less restrictive measure because by its very terms, the

5    inmate is still restricted from exercising his chosen religion.

6          Moreover, while NDOC may have an interest in ensuring its inmates comply

7    with the law, Snyder does not demonstrate that the lawful possession of eagle

8    feathers furthers NDOC's safety and security interests.  And it also does not appear

9    that Plaintiff's request for relief makes reference to eagle feathers.

10         Because there is no genuine dispute as to the material facts underlying

11   Plaintiff's RLUIPA claim, Plaintiff's Motion for Summary Judgment is granted as to

12   this cause of action.[5]  However, Plaintiff's request for injunctive relief is overly broad.

13   (SAC at 14) (requesting an "[i]njunction prohibiting defendants from discriminatory

14   ethnicity requirements[,] removal of exclusionary rule for native American

15   religion. . . . prohibit defendants from tampering and hindering Native American

16   practices by adding rules.").  The Court "shall not grant or approve any prospective

17   relief unless . . . such relief is narrowly drawn, extends no further than necessary to

18   correct the violation of the Federal right, and is the least intrusive means necessary to

19   correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).  Accordingly,

20   Defendants are hereby enjoined from prohibiting Plaintiff from accessing the Native

21   American grounds or participating in Native American ceremonies available to other

22

23

24

25   [5] RLUIPA allows plaintiffs to pursue only injunctive relief. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("[RLUIPA] does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received.").

inmates, solely on the basis of Plaintiff's lack of Native American race or tribal membership.

### 2.    *First Amendment*

Prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  The right to free exercise of religion, however, "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion." *Jones*, 791 F.3d at 1031–32.  To merit protection under the free exercise clause, the claimant's proffered belief must be sincerely held. *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981).  As the Ninth Circuit has said, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

As discussed above, Plaintiff has established the absence of a genuine issue of fact regarding Plaintiff's sincerely held religious beliefs and the burden AR 810.3 imposes on his religious exercise.  The issue before the Court is whether the regulation is reasonably related to legitimate penological interests.  In *Turner v. Safley*, the Supreme Court set forth four factors for courts to consider when determining if a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a valid and rational interest "between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) the impact that

accommodating "the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the absence or existence of "ready alternative . . . that fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 89–91.  The task in considering the *Turner* factors is not to balance the four factors, but to determine whether the state has shown a "reasonable" relation between the policy and legitimate penological objectives, rather than simply a "logical" one. *Beard v. Banks*, 548 U.S. 521, 522 (2006).

In this case, Defendants submit that there are alternative means of practicing Native American religion that do not require Plaintiff's participation in sweat lodge ceremonies.  Plaintiff can practice individually in his cell because he can obtain materials on the history and practices of Native American religion. (Defs.' MSJ at 11–12); (Snyder Decl., Ex. B to Defs.' MSJ).  Moreover, Defendants have a legitimate interest in preventing non-Native American inmates from possessing eagle feathers in violation of the law. (*Id.*).  Disallowing non-Native American inmates from participating in Native American religious ceremonies where eagle feathers are used is reasonably related to this legitimate interest.  But "the burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  Here, Plaintiff offers nothing to demonstrate that the regulation at issue is not reasonably related to a penological interest and thus invalid.  Accordingly, the Court grants summary judgment in favor of Defendants on Plaintiff's First Amendment claim.

### 3.   *Fourteenth Amendment*

The Equal Protection Clause indisputably protects prisoners from arbitrary racial discrimination, *see Turner*, 482 U.S. at 84 (holding that "[p]rison walls do not

form a barrier separating prison inmates from the protections of the Constitution"), but the court's review of prison policies and actions is tempered by the recognition that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). A "prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests" and not an exaggerated response to a particular concern. *Turner*, 482 U.S. at 89.

In this case, Defendants indicate there is no genuine issue of material fact that Defendants did not act with an intent to discriminate against Plaintiff based on his membership in a protected class. (Defs.' MSJ at 10). The Court disagrees. Indeed, the language in AR 810.3 draws an explicit racial distinction. (*See* AR 810.3, Ex. A to Defs.' MSJ at 11–12). Inmates seeking to participate in sweat lodge ceremonies must provide evidence of their Native American heritage. (*Id.*). The requirement is a necessary predicate for further consideration of the request. Additionally, there is no factual dispute that Plaintiff's requests were denied more than once based on his lack of "tribal papers." (*See, e.g.*, Faith Group Decl. Form, Ex. B to Mot. Recons., ECF No. 28-1). Because Defendants intentionally discriminated against Plaintiff on the basis of his race, Defendants violated Plaintiff's right to equal protection of the law.

The next step in the analysis requires the Court to determine whether the disparity in treatment based on Plaintiff's race was rationally related to a legitimate penological interest. As noted in connection with Plaintiff's First Amendment claim, Defendants have provided some evidence of legitimate penological interests and their rational relation to AR 810.3. Conversely, Plaintiff has not carried his burden to show

otherwise.  Accordingly, the Court grants summary judgment in favor of Defendants as to the Fourteenth Amendment claim.[6]

**B.     Motion for Sanctions, (ECF No. 91)**

In Plaintiff's Motion for Sanctions, (ECF No. 91), Plaintiff contends that Defendants are in violation of the Court's preliminary injunction Order because Defendants have implemented a new schedule which only permits Plaintiff to sweat once a month.  Plaintiff provides a copy of HDSP's Chapel Schedule as an exhibit to the Motion. (Ex. A to Mot. Sanctions, ECF No. 91).  The Chapel Schedule lists the time and date for each faith group's services and does reference Plaintiff in particular. (*See id.*).  In response, Defendants explain that Plaintiff has been permitted to participate in Native American religious ceremonies consistent with the preliminary injunction Order. (Resp., ECF No. 93).  However, Plaintiff's challenge stems from his request for a particular schedule. (*Id.*).

Having reviewed and considered this matter, the Court does not find that sanctions are warranted.  While the Court ordered NDOC Employees to allow Plaintiff to "participate in Native American religious ceremonies with the Native American practitioners," the Court did not require Defendants to adhere to a specific schedule. (Order at 6, ECF No. 24).  Plaintiff does not allege that he is being precluded from practicing his religion because he is a non-Native American.  Rather, it appears that NDOC employees' scheduling policies apply to all practitioners of the Native American religion alike.  Because Plaintiff has not demonstrated that Defendants are in violation of the Court's Order, Plaintiff's Motion is denied.

---

[6] Plaintiff moves for a copy of the transcript of the October 9, 2018 preliminary injunction hearing. Because the Court has now ruled on the parties' dispositive motions, Plaintiff's Motion for Transcript, (ECF No. 90), is **DENIED without prejudice as moot**.  Plaintiff may renew this request should he file further motions for which the transcript is relevant.

**C.     Motion for Sanctions, (ECF No. 99)**

In Plaintiff's Motion for Sanctions, (ECF No. 99), he asserts that Defendants are in violation of the Court's preliminary injunction Order because Plaintiff has not been granted access to the Native American grounds or the ability to perform sacred ceremonies for a dying family member.  Defendants respond that Plaintiff's Motion is moot because he has been granted access to the Native grounds. (Resp., ECF No. 104).  In his Reply, Plaintiff argues the issue is not moot because Native American services have been cancelled a number of times. (Reply, ECF No. 109).

Having reviewed and considered this matter, the Court does not find that sanctions are warranted.  The cancellation of certain religious services "an inconvenience on religious exercise," and do not meet the substantial burden requirement of RLUIPA. *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006).  Moreover, as with Plaintiff's prior request for sanctions, Plaintiff does not claim these cancellations are specifically aimed at him.  Rather, these scheduling issues pertain to all practitioners of the Native American religion.  Moreover, because Plaintiff has been granted access to the Native grounds and permitted to perform the necessary ceremonies, Plaintiff's Motion for Sanctions is denied as moot.

**IV.          CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 97), is **GRANTED** in part and **DENIED** in part.  Plaintiff is entitled to summary judgment as to his RLUIPA claim for injunctive relief against Defendants.  Accordingly, Defendants are **HEREBY ENJOINED** from prohibiting Plaintiff Ernest Guardado from accessing the Native American grounds or participating in Native American

ceremonies available to other inmates, solely on the basis of Plaintiff's lack of Native American race or tribal membership.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 114), is **GRANTED** in part and **DENIED** in part.  Defendants are entitled to summary judgment with respect to Plaintiff's First and Fourteenth Amendment claims.

**IT IS FURTHER ORDERED** that Plaintiff Motion for Transcript, (ECF No. 90), is **DENIED without prejudice as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions, (ECF No. 91), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions, (ECF No. 99), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Extend Time, (ECF Nos. 107, 112), are **GRANTED** *nunc pro tunc*

**DATED** this ___6___ day of October, 2020.

_____

Gloria M. Navarro, District Judge
United States District Court